# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0752

In the Matter of the Welfare of: M. A. B., Child.

**Filed January 22, 2024**
**Affirmed**
**Reyes , Judge**

Itasca County District Court
File No. 31-JV-18-3023

Landon J. Ascheman, Ascheman Law, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Matti R. Adam, Itasca County Attorney, John R. Kempe, Assistant County Attorney, Grand Rapids, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Hooten, Judge.*

## SYLLABUS

When the state moves to terminate a continuance for dismissal within the time frame specified under Minnesota Rule of Juvenile Delinquent Procedure 14.04, the district court retains subject-matter jurisdiction over an adult defendant's termination hearing under Minn. Stat. § 260B.193, subd. 5(c) (2022), to "conduct a trial" until the defendant turns 21 years old.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**REYES**, Judge

Appellant argues that the district court lacked subject-matter jurisdiction to adjudicate him delinquent of fifth-degree criminal sexual conduct because it did not terminate his continuance for dismissal until after he turned 19 years old. We affirm.

**FACTS**

At age 15, appellant M.A.B. sexually assaulted his nine-year-old niece. Following an investigation, respondent State of Minnesota filed a juvenile-delinquency petition against M.A.B., alleging one count of second-degree criminal sexual conduct under Minn. Stat. § 609.343 (2016) (count 1) and one count of fifth-degree criminal sexual conduct under Minn. Stat. § 609.3451 (2016) (count 2).

At the initial hearing in November 2018, the parties reached an agreement in which the state would dismiss count 1 and suspend prosecution on count 2 pursuant to a continuance for dismissal (CFD) under Minn. R. Juv. Delinq. P. 14. In exchange, M.A.B. provided testimony regarding the alleged assault, testimony which the district court preserved for use in a potential future prosecution if M.A.B. materially violated his CFD agreement. The district court also placed M.A.B. on supervised probation, with conditions to remain law abiding, abstain from accessing pornography, and comply with the recommendations of a psychosexual evaluation.

In December 2019, M.A.B. admitted to violating the terms of his CFD agreement by failing to comply with his psychosexual evaluation and by pleading guilty to a new criminal-harassment charge. The district court continued M.A.B. on probation after

2

imposing the additional condition that M.A.B. complete a sex-specific treatment program. In December 2020, the district court ordered that the CFD period be extended until M.A.B. turned 19 years old to give him the maximum opportunity to comply with the aftercare recommendations of the sex-specific treatment program. Less than a year later, M.A.B. admitted to a second probation violation after accessing pornography. The district court again continued M.A.B. on probation after imposing additional probation conditions.

Then on January 13, 2022, five days before M.A.B. turned 19, the probation department filed another violation report, alleging that M.A.B. failed to comply with his sex-offender treatment program or complete the additional obligations imposed by the district court following his earlier probation violations. The next day, on January 14, 2022, the state moved to terminate the CFD agreement and resume prosecution on count 2, arguing that M.A.B. materially violated the agreement.

In April 2022, the district court conducted a CFD termination hearing, during which M.A.B. admitted that he materially violated the terms of his CFD agreement and entered a not-guilty plea on the resumed fifth-degree criminal-sexual-conduct charge. M.A.B. later changed his plea to guilty during a stipulated-facts trial in October 2022. Following his trial, M.A.B. moved to dismiss the fifth-degree criminal-sexual-conduct charge, arguing that the district court lacked subject-matter jurisdiction. The district court denied M.A.B.'s motion and adjudicated him delinquent. This appeal follows.

**ISSUE**

Did the district court err by determining that it had subject-matter jurisdiction to terminate M.A.B.'s continuance for dismissal after he turned 19 years old?

**ANALYSIS**

**The district court properly determined that it had subject-matter jurisdiction to conduct M.A.B.'s CFD termination hearing under Minn. Stat. § 260B.193 (2022) and Minn. R. Juv. Delinq. P. 14.**

M.A.B. asserts that the district court lost subject-matter jurisdiction to adjudicate him delinquent because his CFD termination hearing did not take place until after he turned 19 years old. We are not persuaded.

"Subject-matter jurisdiction is a court's power to hear and determine cases that are presented to the court." *State v. Losh*, 755 N.W.2d 736, 739 (Minn. 2008). This court reviews subject-matter-jurisdiction questions in juvenile-delinquency matters de novo. *In re Welfare of C.S.N.*, 917 N.W.2d 427, 431 (Minn. App. 2018).

Appellate courts review questions of statutory interpretation and subject-matter jurisdiction de novo. *Id.* Statutory interpretation begins by analyzing whether the statute's language is ambiguous on its face. *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 290 (Minn. 2013). A statute is ambiguous only if it is susceptible to more than one reasonable interpretation. *Id.* If a statute is unambiguous, reviewing courts apply the statute's plain meaning. *Id.* These same principles also guide appellate courts' interpretation of court rules. *See Gams v. Houghton*, 884 N.W.2d 611, 616 (Minn. 2016). When interpreting a statute, courts may presume that the legislature did not intend to produce an absurd or unreasonable result. Minn. Stat. § 645.17 (2022).

4

Minnesota's juvenile-jurisdiction statute provides district courts with original and exclusive jurisdiction over juveniles who are alleged to be delinquent prior to turning 18. Minn. Stat. § 260B.101, subd. 1 (2022). Generally, a district court's juvenile jurisdiction ends once a juvenile turns 19. Minn. Stat. § 260B.193, subd. 5(a). However, an exception to this rule extends its jurisdiction to "conduct a trial . . . if: (1) an adult is alleged to have committed an offense before the adult's 18th birthday; and (2) a [delinquency] petition is filed . . . before the adult's 21st birthday." *Id.*, subd. 5(c).

Under Minn. R. Juv. Delinq. P. 14.01, subd. 1, CFD agreements allow for a juvenile proceeding to "be suspended for a specified period without a finding that the allegations of the charging document have been proved." After the parties enter into a CFD agreement, a district court may terminate the agreement and resume delinquency proceedings if the state files a termination motion "not later than one month *after*" the CFD period expires, and the district court determines that the juvenile has materially violated the CFD agreement. Minn. R. Juv. Delinq. P. 14.04, subd. 2(B) (emphasis added).

Neither party asserts that either the statute or rule 14 is ambiguous. The dispute in this case is whether the district court properly interpreted the "conduct a trial" provision in Minn. Stat. § 260B.193 to provide it with continued jurisdiction to decide the state's CFD revocation motion after M.A.B. turned 19 years old. The state argues that, because it filed its CFD termination motion within the time frame provided under rule 14.04, the district court correctly determined that it had continued jurisdiction to decide the state's termination motion under the "conduct a trial" exception. M.A.B. counters that the district court loses jurisdiction over all pretrial proceedings once a juvenile turns 19 and that,

5

because CFD termination hearings are not "trials," the district court lacked jurisdiction to conduct his CFD termination hearing after he turned 19.

Based on the interplay between the jurisdictional statute and rule 14.04, we conclude that the only reasonable interpretation of Minn. Stat. § 260B.193 is that the "conduct a trial" exception encompasses pretrial proceedings, including CFD termination hearings. Section 260B.193, subdivision 5, allows district courts to establish CFDs that last until a juvenile turns 19. Meanwhile, rule 14.04 allows the state to bring a CFD termination motion up to one month after the CFD period expires. Minn. R. Juv. Delinq. P. 14.04, subd. 2(B). Then, if the district court grants the state's termination motion, Minn. Stat. § 260B.193, subd. 5(c), provides the district court with continuing jurisdiction over a juvenile until age 21. When read together, the language of the statute and the rule plainly contemplates CFD termination proceedings occurring after a juvenile turns 19.

Notably, Minnesota courts faced with similar jurisdictional issues have reached the same conclusion. *See, e.g.*, *In re Welfare of C.A.N.*, 370 N.W.2d 438, 442-43 (Minn. App. 1985) (holding district court had subject-matter jurisdiction to adjudicate delinquency actions initiated within the jurisdictional-limitations period); *In re Welfare of V.D.M.*, 623 N.W.2d 277, 280 (Minn. App. 2001) (noting that if district court could conduct trials, receive pleas, or impose dispositions on an adult individual, it is reasonable that the district court also had continued jurisdiction to complete adult individual's probation revocation), *rev. denied* (Minn. May 15, 2001).

M.A.B. asserts that the only reasonable interpretation of Minn. Stat. § 260B.193 is that the district court lost jurisdiction to conduct his CFD termination hearing once he turned 19 because (1) under a plain reading of the statute, district courts lose jurisdiction over all pretrial proceedings once a juvenile turns 19; (2) the term "trial" in subdivision 5(c) does not include CFD termination hearings; and (3) the district court conflated rule 14 with the procedures governing continuances without adjudication under rule 15 when it determined that it had subject-matter jurisdiction over the state's CFD termination motion. We address each assertion in turn.

M.A.B.'s argument that a district court cannot conduct any pretrial proceedings after a juvenile turns 19 directly contradicts the provision in rule 14.04 that allows the state to file a CFD termination motion up to "one month after" he turned 19. Minn. R. Juv. Delinq. P. 14.04, subd. 2(B). We interpret legislative enactments to give effect to every provision. *See Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000); *Gams*, 884 N.W.2d at 616. Because M.A.B.'s interpretation of Minn. Stat. § 260B.193 would read out the limitations period provided under rule 14.04, it is unreasonable.

M.A.B. cites *In re Welfare of B.J.M.* to support his argument that, under Minn. Stat. § 260B.193, the district court lost all jurisdiction over him once he turned 19. 636 N.W.2d 155 (Minn. App. 2001). *B.J.M.* is distinguishable. The *B.J.M.* court held that, because the district court did not enter the adult individual's delinquency adjudication until several months after he turned 19, it lacked jurisdiction to "impose a disposition" under Section 260B.193, subdivision 5(e), by ordering the individual to pay restitution. *Id.* at 157. Here, the district court did not impose a disposition in M.A.B.'s case and concluded proceedings

7

after conducting M.A.B.'s trial and adjudicating him delinquent. Moreover, the *B.J.M.* court acknowledged that district courts can retain jurisdiction to conduct trials beyond the jurisdictional age limit. *Id.* *B.J.M.* is therefore consistent with the state's position that the district court retained jurisdiction to conduct the CFD termination hearing after M.A.B. turned 19. M.A.B.'s first statutory argument contradicts the unambiguous language in Minn. Stat. § 260B.193 and rule 14 and is therefore unpersuasive.

M.A.B.'s second argument, that the "conduct a trial" exception in Minn. Stat. § 260B.193, subd. 5(c), is limited to only the trial itself and excludes CFD termination hearings, similarly contradicts rule 14.04's provision that allows the state to file a CFD termination motion up to "one month after" the CFD period ends, an inconsistency which makes M.A.B.'s interpretation unreasonable. Minn. R. Juv. Delinq. P. 14.04, subd. 2(B); *Schroedl*, 616 N.W.2d at 277; *Gams*, 884 N.W.2d at 616.[1]

Furthermore, M.A.B.'s interpretation would lead to the absurd result that M.A.B. would be "home free" from any consequences for repeatedly violating his probation, simply because he turned 19 before the district court could hear the state's motion to terminate the CFD agreement. Minnesota courts have consistently rejected similar "home free" arguments when interpreting juvenile-delinquency statutes. For example, in *V.D.M.*, this court held that the statutory exceptions to the jurisdictional age limit conferred

---

[1] Notably, another exception in Minn. Stat. § 260B.193, subd. 5(c), extends the district court's jurisdiction to "receive a plea." Because a district court would receive a plea before conducting a trial, it is unreasonable that the district court would have subject-matter jurisdiction to both receive a plea and conduct a trial after a juvenile turns 19, but not to preside over the pretrial hearings or motion practice that can occur between these two stages of a delinquency proceeding.

jurisdiction on the district court to conduct an extended-jurisdiction-juvenile (EJJ) probation revocation over an adult defendant because the state timely sought the revocation proceeding. 623 N.W.2d at 280. The *V.D.M.* court reasoned that extending the district court's jurisdiction until a juvenile turns 21 was necessary to avoid the "disfavored and unreasonable result of an adult individual avoiding punishment, or getting off 'home free.'" *Id.*

Finally, M.A.B.'s argument that the district court assumed jurisdiction by conflating rules 14 and 15 is premised on his argument that Minn. Stat. § 260B.193 precludes a district court from hearing a motion to terminate a CFD agreement after a juvenile turns 19. Because we conclude that M.A.B.'s statutory interpretation is unreasonable, his argument that the district court conflated rules 14 and 15 fails.

Minnesota statute section 260B.193 and rule 14 are unambiguous. We therefore hold that, under the plain language of Minn. Stat. § 260B.193 and rule 14, when the state moves to terminate a continuance-for-dismissal-agreement within the time frame specified under Minn. R. Juv. Delinq. P. 14.04, the district court retains jurisdiction over an adult defendant's termination hearing under Minn. Stat. § 260B.193, subd. 5(c), to "conduct a trial" until the defendant turns 21. We conclude that the district court properly applied Minn. Stat. § 260B.193 and rule 14 when it determined that it had subject-matter jurisdiction to terminate M.A.B.'s CFD agreement and adjudicate him delinquent after he turned 19.

**DECISION**

When the state moves to terminate a continuance for dismissal within the time frame specified under Minn. R. Juv. Delinq. P. 14.04, the district court retains jurisdiction over an adult defendant's termination hearing under Minn. Stat. § 260B.193, subd. 5(c), to "conduct a trial" until the defendant's 21st birthday. Here, the state moved to terminate M.A.B.'s CFD agreement four days before M.A.B. turned 19, which is well within the period allowed by rule 14.04. Because the state's timely termination motion continued the district court's jurisdiction to conduct M.A.B.'s termination hearing under the "conduct a trial" exception in Minn. Stat. § 260B.193, the district court did not err by determining that it had subject-matter jurisdiction to terminate M.A.B.'s continuance for dismissal and to adjudicate him delinquent.

**Affirmed.**