STATE OF MINNESOTA

IN SUPREME COURT

A14-1810

Court of Appeals                                                    Hudson, J.
                                                  Took no part, Chutich, J.


In the Matter of the Welfare of:  C.J.H., Child,

                                                         Filed:  April 27, 2016
                                                       Office of Appellate Courts

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

John J. Muhar, Itasca County Attorney, Mary J. Evenhouse, Assistant Itasca County Attorney, Grand Rapids, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

The juvenile court did not continue this case without adjudication under Minn. R. Juv. Delinq. P. 15.05 because that court never found that the allegations in the charging document were proven, and therefore the court of appeals erred when it concluded that the juvenile court's jurisdiction expired before respondent was adjudicated delinquent.

Reversed.

1

OPINION

HUDSON, Justice.

This case presents the question of whether the proceedings at respondent C.J.H.'s first appearance constituted a "continuance for dismissal" under Minn. R. Juv. Delinq. P. 14.01 or a "continuance without adjudication" under Minn. R. Juv. Delinq. P. 15.05, subd. 4. The answer to this question is significant because it controls the length of the juvenile court's jurisdiction.[1]

The State filed a juvenile delinquency petition against C.J.H. At the first appearance, defense counsel told the juvenile court that the parties had agreed to a "continuance for dismissal." The record of the proceedings at times suggests that C.J.H. was stipulating to facts that would only be used against him if the continuance was terminated and at other times suggests C.J.H. was unconditionally admitting the charged offense of attempted criminal sexual conduct in the third degree. Without finding that the allegations in the charging document had been proved, the juvenile court continued the delinquency proceeding. Approximately nine months later, the juvenile court terminated the continuance. Thereafter, the juvenile court adjudicated C.J.H. delinquent.

---

[1] Minnesota Statutes section 260B.193, subdivision 5(a) (2014) provides that "the jurisdiction of the court shall continue until the individual becomes 19 years of age if the court determines it is in the best interest of the individual to do so." Minn. Stat. § 260B.193, subd. 5(a). Rule 14.01, subdivision 3 provides that a continuance-for-dismissal agreement "may not specify a period of suspension longer than the juvenile court has jurisdiction over the child." Minn. R. Juv. Delinq. P. 14.01, subd. 3. Rule 15.05 permits the court to continue the proceedings without adjudication, but the period of continuance may not exceed 180 days in length when the child is not in detention. Minn. R. Juv. Delinq. P. 15.05, subd. 4(B).

On appeal, C.J.H. argued that the proceedings at the first appearance constituted a "continuance without adjudication" because he unconditionally admitted the charged offense, and therefore, under Minn. R. Juv. Delinq. P 15.05, the juvenile court's jurisdiction expired before he was adjudicated delinquent. Persuaded by C.J.H.'s argument, the court of appeals vacated the delinquency adjudication. We need not decide whether C.J.H. conditionally or unconditionally admitted the charged offense because the plain language of Rule 15.05 requires a juvenile court to find the allegations in the charging document to have been proven before continuing the case without adjudication. Because no such finding was made in this case, the proceedings at C.J.H.'s first appearance did not constitute a continuance without adjudication. Therefore, the court of appeals erred when it concluded that the juvenile court's jurisdiction expired before C.J.H. was adjudicated delinquent. We reverse.

I.

In October 2013, the State filed a juvenile delinquency petition against 17-year-old C.J.H., alleging three counts. Count 1 alleged the offense of third-degree criminal sexual conduct, Minn. Stat. § 609.344, subd. 1(b) (2014). Count 2 alleged the offense of attempt, Minn. Stat. § 609.17, subd. 1 (2014), where the underlying crime was third-degree criminal sexual conduct. Count 3 alleged the offense of consumption of alcohol by a person under 21, Minn. Stat. § 340A.503, subd. 1(a)(2) (2014).

At C.J.H.'s first appearance in November 2013, defense counsel told the juvenile court the parties had agreed to a "continuance for dismissal." Under the rule authorizing a continuance for dismissal in juvenile cases, the parties must memorialize their

3

agreement "on the record or in writing and signed by the prosecuting attorney, the child, and the child's counsel, if any." Minn. R. Juv. Delinq. P. 14.01, subd. 1. The parties chose to put the agreement "on the record."

According to defense counsel, the State would continue the matter until C.J.H.'s 19th birthday. If C.J.H. successfully complied with the agreed-upon conditions, the State would dismiss the matter at the end of the continuance. The agreement included the following conditions. First, C.J.H. had to give "a factual basis [on Count 2][2] and *if he's not successful* with the continuance for dismissal, *this basis would be submitted to the court* without further foundation and it would likely prove the charge[s] against him."[3] (Emphasis added.) Second, C.J.H. "would complete a psychosexual evaluation and follow the recommendations of that evaluation."

After C.J.H. was duly sworn, defense counsel asked him a series of questions in an effort to establish the factual basis required by the parties' agreement. C.J.H. waived his rights to a speedy trial, to remain silent, and to confront the witnesses against him. The prosecutor also asked C.J.H. a number of questions. The prosecutor asked, "[Y]ou're pleading guilty today to this offense because you are guilty?" The juvenile court then interrupted, saying "Well, he's not pleading guilty." The prosecutor acknowledged her misstatement, responding, "I'm sorry. I'm sorry. You're not pleading guilty." In the

---

[2]   The State declined to prosecute the charges of third-degree criminal sexual conduct and consumption of alcohol by a person under 21.

[3]   *See* Minn. R. Juv. Delinq. P. 14.01, subd. 1, which provides that "[t]he agreement may include stipulations concerning the existence of specified facts . . . if the suspension of prosecution is terminated and there is a trial on the allegations."

4

end, C.J.H. admitted to all of the elements of the charged offense. During the proceeding, the judge asked C.J.H. if he "[knew] why [he was] guilty?" Finally, as part of the proceeding, C.J.H. was told that if he failed to comply with the conditions of the continuance, the State would be able to "hand the [J]udge" his statements and he would be found guilty of third-degree attempted sexual conduct and face the consequences associated with conviction.

In August 2014, C.J.H. appeared before the juvenile court on allegations that he had materially violated the terms of the continuance.[4] After considering all of the relevant facts, the juvenile court granted the State's motion to terminate the continuance. When the juvenile court asked the prosecutor whether she was "planning to pursue the original charge," she replied:

> Your Honor, I think he has *pled* to second degree assault. I mean - - sorry, second - - Count 2, criminal sexual conduct in the third degree, and we are simply asking the court to accept into evidence his testimony that was given on November 27, 2013. . . . [T]he child *has already pled guilty - - or admitted in a factual basis before the court*.

(Emphasis added.) Although defense counsel disagreed, the juvenile court commenced a hearing on the original charge. After C.J.H.'s testimony from the November, 2013 hearing was entered into evidence, and the victim testified, defense counsel moved for a judgment of acquittal, arguing that because C.J.H.'s factual basis was akin to a

---

[4] The alleged probation violations included the following: (1) C.J.H. researched countermeasures on how to cheat a polygraph and later attempted to use such countermeasures during a June 2014 polygraph; (2) when the countermeasures failed, he surreptitiously telephoned his mother's boyfriend and directed him to delete several files on C.J.H's computer; and (3) C.J.H. had been viewing pornography approximately twice a week since March 2014.

confession it needed to be corroborated under Minn. Stat. § 634.03 (2014).   After the

bench trial, the juvenile court found C.J.H. guilty of attempted criminal sexual conduct in

the third degree and adjudicated him delinquent.

On appeal, C.J.H. asserted for the first time that he had not been granted a

continuance for dismissal pursuant to Rule 14.01, but rather had been granted a

continuance without adjudication pursuant to Rule 15.01.   Therefore, C.J.H. argued that

the juvenile court's jurisdiction expired before he was adjudicated delinquent.   The court

of appeals agreed, explaining that:

> [T]he juvenile court's continuance of the delinquency proceeding against C.J.H. constituted a continuance without adjudication because it followed his waiver of trial rights and admission of attempted third-degree criminal sexual conduct, a charged offense.   Under Minn. Stat. § 260B.198, subd. 7 [(2014)], and Minn. R. Juv. Delinq. P. 15.05, subds. 1(B), 4, the juvenile court's subject-matter jurisdiction terminated no later than 180 days after the November 27, 2013 continuance order.   The juvenile court did not commence new proceedings against C.J.H. until August 6, 2014, over 250 days after the continuance order.   As a result, the court did not have jurisdiction to adjudicate C.J.H. delinquent . . . .

*In re Welfare of C.J.H.*, 864 N.W.2d 194, 202 (Minn. App. 2015).   We subsequently

granted the State's petition for review.

## II.

The State argues that the court of appeals erred when it concluded that C.J.H.'s

admissions at the first appearance transformed the proceeding into a continuance for

adjudication under Minn. R. Juv. Delinq. P. 15.05.   To support its argument, the State

highlights the fact that Minn. R. Juv. Delinq. P. 14.01, subd. 1 allows the parties to

stipulate to "the existence of specified facts or the admissibility into evidence of specified

testimony, evidence, or depositions if the suspension of prosecution is terminated and there is a trial on the allegations." C.J.H. contends that the admissions he made at the first appearance were akin to a guilty plea, and therefore the court of appeals did not err when it concluded that his admissions transformed the proceeding into a continuance for adjudication under Minn. R. Juv. Delinq. P. 15.05.

We have never interpreted Rule 14.01 or Rule 15.05. The interpretation of a rule of court is a question of law; therefore, a de novo standard of review applies. *See, e.g.*, *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014). "When construing procedural rules, we look to the plain language of the rule and its purpose." *In re Welfare of S.M.E.*, 725 N.W.2d 740, 742 (Minn. 2007).

Rule 14.01 states in relevant part:

> After consideration of the victim's views and subject to the court's approval, the prosecuting attorney and the child's counsel may agree that the juvenile proceeding will be suspended for a specified period without a finding that the allegations of the charging document have been proved after which it will be dismissed as provided in Rule 14.07 on condition that the child not commit a delinquency or juvenile petty or juvenile traffic offense during the period of the continuance. The agreement shall be on the record or in writing and signed by the prosecuting attorney, the child, and the child's counsel, if any. The agreement shall contain a waiver by the child of the right to a speedy trial under Rule 13.02, subdivisions 1 and 2. *The agreement may include stipulations concerning the existence of specified facts or the admissibility into evidence of specified testimony, evidence, or depositions if the suspension of prosecution is terminated and there is a trial on the allegations.*

Minn. R. Juv. Delinq. P. 14.01, subd. 1 (emphasis added).

Minnesota Rule of Juvenile Delinquency Procedure 15.05, subdivision 1 states: "[o]n each of the charges *found by the court to be proved*, the court shall either: (A)

7

adjudicate the child delinquent . . . ; or (B) continue the case without adjudicating the child delinquent . . . ." (Emphasis added.)

A.

The State correctly argues that Minn. R. Juv. Delinq. P. 14.01, subd. 1 allows the parties to stipulate to "the existence of specified facts or the admissibility into evidence of specified testimony, evidence, or depositions if the suspension of prosecution is terminated and there is a trial on the allegations." The record in this case, however, is not as "clear" as the State claims. Given the prosecution's repeated statements that C.J.H. was pleading guilty to the charged offense, and the juvenile court's inquiry into C.J.H.'s understanding of why he was guilty, the record is quite muddy.

Although Rule 14.01, subdivision 1 allows the parties to memorialize their agreement "on the record" *or* "in writing," much of the confusion in this case would likely have been avoided had the parties memorialized their agreement in writing. The process of drafting a written document is less prone to the type of misspoken, self-contradictory statements that punctuate the record in this case. The distinction between a "conditional" and an "unconditional" admission of the elements of the charged offense might be legally significant, and therefore the precise nature of the admission should be clearly articulated by the parties.[5] We are not suggesting that parties must memorialize a conditional admission of the elements of the charged offense in writing, rather than on

---

[5] As discussed below, the distinction is not significant in C.J.H.'s case because the juvenile court failed to find that the allegations in the charging document had been proved.

the record. Instead, we observe that when the parties use the on-the-record process to memorialize a "conditional" admission, they should proceed with caution and use precise language, especially when the on-the-record process is routinely utilized to memorialize an "unconditional" admission of the elements of the charged offense.

B.

Having concluded that the record is not as "clear" as the State claims, we consider C.J.H.'s contention that the juvenile court's order following his 2013 appearance contains language that is the equivalent of a finding of guilt.

In its 2013 order, the juvenile court determined that "[t]he child has entered a factual basis before the Court which *supports* the Court finding the child guilty of" attempted criminal sexual conduct in the third degree, a felony. (Emphasis added.) The juvenile court went on to state, "[t]he [child] agrees that if the suspension for prosecution should be terminated, a transcript of his factual basis will be submitted to the Court without further foundation and *would be able to* prove the child guilty of this offense."

We conclude that the language in the order does not constitute a finding that the allegations in the charging document had been proved. Instead, the language reflects the juvenile court's effort to satisfy Minn. R. Juv. Delinq. P. 14.01, subd. 2, which requires, in part, "a showing of *substantial likelihood* that the allegations could be proved." (Emphasis added.) Although not controlling, the comment to Rule 14 supports our conclusion. The comment indicates that Minn. R. Crim. P. 27.05[6] was incorporated into

---

[6]    Minn. R. Crim. P. 27.05, subd. 1 states:

(Footnote continued on next page.)

9

the juvenile rules in part to "allow juvenile court practitioners the benefits of continuance for dismissal." Minn. R. Juv. Delinq. P. 14 cmt. A continuance for dismissal is advantageous to juveniles because "there is no finding that the allegations of the charging document have been proved in a continuance for dismissal," thus, the offense does not "count towards a juvenile's future criminal history score under the sentencing

---

(Footnote continued from previous page.)

       (1) A prosecution may be suspended for a specified time and then dismissed under subdivision 6 if:
           (a) the agreement is in writing and signed by the parties;
           (b) the victim's views are considered;
           (c) the court consents;
           (d) the court finds a substantial likelihood of conviction and that the benefits of rehabilitation outweigh the harm to society from suspending prosecution.

       (2) The agreement must provide that the defendant not commit a new crime or petty misdemeanor and that the defendant waive the right to a speedy trial.

       In addition, the agreement may:

       (a) include stipulations of fact or of the admissibility of specified testimony, other evidence, and depositions if the diversion agreement is terminated and the case is tried;

       (b) provide for any term a court could impose as a condition of probation except the defendant may not be incarcerated as a condition of diversion.

       (3) *Limitations.* The agreement cannot suspend prosecution longer than the period of probation the court could impose if the defendant were convicted. The agreement cannot include a condition the court could not impose as a condition of probation.

guidelines."[7]  Minn. R. Juv. Delinq. P. 14 cmt.  Consistent with the purpose of Rule 14, the language of the juvenile court's order indicates that a transcript of C.J.H.'s factual basis would only be submitted to the court if the continuance was terminated.

In sum, Minn. R. Juv. Delinq. P. 15.05 requires a finding that the allegations in the charging document have been proved.  Because the juvenile court's order did not contain such a finding, the continuance of the juvenile delinquency proceeding did not constitute a continuance without adjudication within the meaning of Minn. R. Juv. Delinq. P. 15.05, even though C.J.H. waived his trial rights and entered an admission to all of the elements of the charged offense.  Accordingly, the court of appeals erred when it concluded that the juvenile court's jurisdiction expired before C.J.H. was adjudicated delinquent.

## III.

Even if the 2013 order did constitute the acceptance of a guilty plea, as C.J.H. argues, it is not clear under the Rules of Juvenile Delinquency Procedure that such an acceptance renders Rule 14 inapplicable.  Rule 8.04, subdivision 5 states:  "[i]f the court accepts a plea of guilty and makes a finding that the allegations in the charging document are proved, the court shall schedule further proceedings pursuant to *Rules 14* and 15."  Minn. R. Juv. Delinq. P. 8.04, subd. 5 (emphasis added).  We must apply the plain meaning of a rule when the language of the rule is clear and unambiguous.  *See State v.*

---

[7]      In addition, upon successful completion of a continuation of dismissal, the child may seek expungement under Minn. Stat. § 299C.11 (2014), because the matter has been decided in the child's favor.

11

*Borg*, 834 N.W.2d 194, 197 (Minn. 2013) ("When construing the procedural rules, we look to the plain language of the rule and its purpose.").

Despite the court of appeals' conclusion to the contrary, the juvenile court's continuance of the juvenile delinquency proceeding did not constitute a continuance without adjudication under Minn. R. Juv. Delinq. P. 15.05 because the juvenile court did not find that the allegations in the charging document had been proved. Thus, the court of appeals erred when it vacated C.J.H.'s delinquency adjudication.

Reversed.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.